THE NO. 333.

THE CYNTHIA.

THE AGNES A. MORAN.

SEABOARD SHIPPING CORPORATION
v. GLOBE OIL DELIVERY CORPORATION et al.

No. 14583.

District Court, E. D. New York.

Jan. 14, 1937.

Eggleston & Vander Clute, of New York City (Carl F. Vander Clute, of New York City, of counsel), for libelant.

Foley & Martin, of New York City (James A. Martin and Christopher E. Heckman, both of New York City, of counsel), for Globe Oil Delivery Corporation.

Macklin, Brown, Lenahan & Speer, of New York City (Richard F. Lenahan, of New York City, of counsel), for the Agnes A. Moran.

GALSTON, District Judge.

On December 23, 1934, at about 7:45 p. m., Seaboard oil barge No. 333 in tow of the tug Agnes A. Moran at East Rutherford, N. J., proceeded down the Passaic river to Bayway, N. J. The barge was light. The tug pushed the barge ahead of her, stern first, the tug being at the middle of the bow of the barge. There were two lights on the two aft corners of the barge which, as the tow was proceeding, were the forward corners.

Coming up the Passaic river was the Globe oil barge 15, in tow of the tug Cynthia. A collision between the tows resulted in damage to Seaboard barge No. 333, and recovery is sought against both steam tugs.

The Agnes A. Moran ascribes the fault of the collision to the Cynthia. The Agnes A. Moran contends that she was proceeding down the river on her starboard side of the channel and that when the Cynthia was observed going up the river on the Cynthia's starboard side, the Agnes A. Moran blew a one-whistle signal and re-reived no reply. Previously to that three whistles had been given by the Agnes A. Moran to the bridge, and at that time the Agnes A. Moran tow proceeded at slow speed. When they got in the vicinity of the bridge, the Cynthia blew alarms and started backing. The barge she had in tow was on her starboard side, and as that tow backed it came in front of the Agnes A. Moran tow at a distance of 600 or 700 feet westward of the bridge.

On the other hand, the Cynthia contends that she came through the bridge under a slow bell and saw two white lights ahead, but no running lights. The assumption then of the Cynthia was that the two white lights indicated a tow going ahead but in the same direction as that of the Cynthia. She heard no whistle blown from the Agnes A. Moran at the time she came through the bridge. When the Cynthia was aware of her error, she blew alarms and realized for the first time that the Agnes A. Moran and her tow were approaching her, even though at that time no running lights were visible.

In view of the contention of the Cynthia that she saw no running lights on the tug, measurements become of some importance. The barge 333 is 36 feet in width and 9 feet above the water line. Her cabin is between 8 and 10 feet above her deck. Since the barge was being pushed stern first, the cabin was, of course, farthest away from the tug Agnes A. Moran. The cabin is 14 feet wide. The captain of the barge 333 corroborates the testimony of the captain of the tug, that the tug was showing running lights. In addition to the starboard and port colored lights, the tug had a headlight and two staff lights. These were higher than the top of the cabin on the barge. Of the two lights on the pole of the tug, the top was 26 feet above the water and the lower one 23. The distance between the side lights, as measured by William R. Bagger, was between 13 and 14 feet, depending upon the points of measurement. These side lights were approximately 27 feet from the bow of the vessel and approximately 15 feet, 10 inches above water when the tug's forward tank was empty.

I cannot believe that if the Cynthia had had a competent lookout stationed, it would have been reasonable for him to conclude that the Agnes A. Moran tow was going in the same direction as the Cynthia.

The dimensions heretofore recited should certainly indicate that the colored lights of the tug should have been visible. There should also have been visible the lights on the barge as well as the white lights on the pole of the Agnes A. Moran. Then, too, the channel is a winding one, and for that additional reason the running lights should have been visible.

Accordingly I think the Cynthia was at fault and the libelant may have a decree against the Cynthia.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.